Teresa Noreen AULT, Relator,

v.

Virgil MULANAX, Respondent.

No. 9523.

Court of Appeals of Texas, Texarkana.

Nov. 12, 1986.

Mike Smith, Erskine, Smith & McMahon, Gilmer, for relator Teresa Ault.

Virgil Mulanax, District Judge, Gilmer, pro se.

Robin D. Sage, Longview, for respondent Ben Ault.

Sandy E. Livengood, Gilmer, for intervenors Sam and Dorothy Hodges.

## ORIGINAL MANDAMUS PROCEEDING

GRANT, Justice.

Noreen Ault filed a petition requesting a writ of mandamus against Judge Virgil Mulanax, of the 115th Judicial District Court of Upshur County (hereinafter referred to as Upshur Court), seeking to have the trial court ordered to consider child custody issues as a part of a pending divorce action originally filed in the 307th Judicial District Court of Gregg County (hereinafter referred to as the Gregg Court). The maternal grandparents, Sam and Dorothy Hodges, have also filed an intervention in this mandamus proceeding. The respondent has not contested venue of the divorce action in the Upshur Court.

The following is a chronological review of the proceedings involved in this case:

10–24–84   Mrs. Ault filed a suit for divorce including matters involving child custody in the Gregg Court.

11–2–84   Mr. Ault filed his answer to the divorce proceeding.

11–15–84   Mrs. Ault was appointed temporary managing conservator of the children and Mr. Ault was ordered to pay temporary child support.

3-8-85   The Gregg Court conducted a hearing concerning the conservatorship of the children. At the conclusion of the hearing, the court announced that Mr. Ault would be the managing conservator. The hearing was recessed for negotiations of the property division, child support and visitation.[1]

3-19-85   Mrs. Ault filed a motion for non-suit pursuant to Rule 164 of the Rules of Civil Procedure.

3-19-85   After filing her motion for non-suit, Mrs. Ault filed a new action for divorce and child custody in the Upshur Court.

3-22-85   The maternal grandparents intervened in the Upshur Court suit for visitation rights.

4-3-85   The Gregg Court entered an order appointing Mr. Ault managing conservator of the minor children.

4-3-85   The Gregg Court granted a non-suit and dismissed Mrs. Ault's divorce action, but directed that orders issued previously on the same date affecting the parent-child relationship were to remain in effect. Mrs. Ault excepted to that part of the order continuing the parent-child relationship order in effect.

4-4-85   Mr. Ault filed a cross-action in the Gregg Court.[2]

4-29-85   Mr. Ault filed an answer in the Upshur Court suit and filed a plea in abatement.

7-18-85   Hearing on plea in abatement.

8-6-85   The Gregg Court issued findings of fact which found the order of April 3, 1985, appointing Mr. Ault as managing conservator to be a final order.

8-7-85   Mrs. Ault filed objections and exceptions to the Gregg Court's findings of fact.

8-7-85   The Gregg Court entered an order transferring the suit involving parent-child relationship to the Upshur Court.

6-9-86   The Upshur Court heard additional arguments on the plea in abatement and took the matter under advisement.

6-17-86   The Upshur Court overruled the plea in abatement as to divorce, but sustained it as to child custody. (The order is styled Order on Plea in Abatement.)

6-23-86   Mr. Ault filed his second amended original answer and cross-petition for divorce in the Upshur Court urging that res judicata and estoppel barred Mrs. Ault from litigating child custody issues.

6-24-86   Mrs. Ault filed special exception to the pleadings filed by Mr. Ault.

7-14-86   The Upshur Court entered an order on the plea in abatement finding that the Gregg Court order granting custody to Mr. Ault was temporary and overruling Mr. Ault's plea in abatement in its entirety. (This order is styled Modified and Second Order on Respondent's Plea in Abatement.)

7-31-86   The Upshur Court entered a third order overruling the plea in abatement as to the divorce, but sustaining it as to child custody. The Upshur Court held that the continuing jurisdiction of the suit affecting parent-child relationship was in the Gregg Court and construed the order of that court to be final in nature. (This order is styled Modified Order on Plea in Abatement.)

The third order issued by the district court of Upshur County on July 31, 1986, is the matter about which Mrs. Ault now complains.

---

1. On page 69 of the statement of facts, the following statement by the court is recorded:
   THE COURT: Ok. The Court will appoint Mr. Ault to be the managing conservator of the children, to which ruling I note Mrs. Ault's exception, I will now recess while the parties attempt subject to her exception to confer about visitation, support and the division of property. I'll recess while ya'll do that.

2. At the Upshur Court hearing on the plea in abatement, the parties stipulated that the first five paragraphs of the plea in abatement were factually correct. Paragraph V states that the cross-action was filed on April 4, 1985. However, this same paragraph states that the order granting the non-suit was made subsequent to the filing of the cross-action. The order of the non-suit is dated April 3, 1985.

## DOMINANT JURISDICTION

■ Initially, the Gregg Court acquired dominant jurisdiction over the divorce proceedings. Dominant jurisdiction is a common law concept which is not based upon lack of jurisdiction, but on the grounds of comity, vexatious litigation, or the avoidance of a mutiplicity of suits. *Cogdell v. Cogdell,* 537 S.W.2d 111 (Tex.Civ.App.-Eastland 1976, writ ref'd n.r.e.); *Wheelis v. Wheelis,* 226 S.W.2d 224 (Tex.Civ.App.-Fort Worth 1950, no writ). The general common law rule in Texas is that the trial court in which a suit for divorce[3] is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts. A subsequent suit in another court having jurisdiction involving the same parties in controversy must be dismissed or abated.[4] However, in the present case, we must look at the effect of the non-suit as well as the Texas Family Code which is superimposed on the common law rules.

## EFFECT OF NON–SUIT

■ The granting of a non-suit is merely a ministerial act; plaintiff's right thereto exists from the moment a written motion is filed or an oral motion is made in open court unless the defendant has, prior to that time, filed pleadings seeking affirmative relief. *Greenberg v. Brookshire,* 640 S.W.2d 870 (Tex.1982). The trial court in a divorce suit by the wife should grant the motion of the wife for non-suit, where at the time of the motion, the husband has sought no affirmative relief. *Ueckert v. Ueckert,* 373 S.W.2d 370 (Tex.Civ.App.-Amarillo 1963, no writ).

Rule 164 of the Texas Rules of Civil Procedure is somewhat difficult to apply to domestic relations actions. In the present case, the record is clear that both sides had rested on the issue of managing conservatorship. However, this could not be construed under Rule 164 to be a time in which the plaintiff had introduced *"all* of his evidence other than rebuttal evidence." (Emphasis added). Even if the suit affecting the parent-child relationship had been severed from the divorce action, there were still other matters in that suit requiring evidence, e.g., child support and visitation, which had not been taken up.

■ The motion for non-suit was effective as of the time that it was filed on March 19, 1985. The petitioner was entitled to non-suit at the time she made the request on that date, and subsequent pleadings filed by the respondent could not affect her right to the non-suit, irrespective of when the motion for non-suit was later acted upon by the trial court. *Ex parte Helle,* 477 S.W.2d 379 (Tex.Civ.App.-Corpus Christi 1972, no writ). Thus, the non-suit was effective prior to the filing of the suit in Upshur County and prior to the cross-action filed by Mr. Ault in Gregg County. This resulted in there being no pending action in Gregg County at the time Mrs. Ault filed her suit for divorce in Upshur County. The Gregg Court could only retain jursidiction to issue temporary orders as discussed below; otherwise as provided in Tex.Fam.Code Ann. § 11.05(e) (Vernon 1986), the voluntary dismissal terminated all jurisdiction of the court.

■ The fact that the Gregg Court excepted the order appointing a managing conservator did not give that court continuing jurisdiction, nor did it give that order the status of being a final order. A voluntary non-suit has the effect of wiping out any interlocutory orders made in the case. *Scherff v. Missouri Pac. Ry. Co.,* 81 Tex. 471, 17 S.W. 39 (1891); *Homeright Co. v. Exchange Warehouses, Inc.,* 526 S.W.2d 241 (Tex.Civ.App.-Tyler 1975, writ ref'd n.r. e.). Because the movant had the right of a complete dismissal, the order could not be considered as res judicata to the Upshur Court proceedings. *Matter of J.A.L.,* 608 S.W.2d 819 (Tex.Civ.App.-Amarillo 1980, no writ); *United States Fidelity & Guaranty*

---

3. This principle applies to all civil suits so long as both suits involve the same cause of action. 2 R. McDonald, *Texas Civil Practice in District and County Courts* § 7.10(a) (rev. 1982).

4. Tex.Fam.Code Ann. § 11.05(e) (Vernon 1986) provides that the entry of a decree by another court having dominant jurisdiction terminates all jurisdiction of a court not having dominant jurisdiction.

*Co. v. Beuhler,* 597 S.W.2d 523 (Tex.Civ. App.-Beaumont 1980, no writ). Thus, such a dismissal is not res judicata upon the refiling of the case.

■ Generally, when the plaintiff takes a non-suit before resting her case, the trial court loses jurisdiction of the entire case except jurisdiction to render the order of dismissal without prejudice. *Newman Oil Co. v. Alkek,* 614 S.W.2d 653 (Tex.Civ.App.- Corpus Christi 1981, writ ref'd n.r.e.), *appeal after remand,* 657 S.W.2d 915 (1983). An exception to this rule has been applied to situations involving the custody of children.

## TEMPORARY CUSTODY ORDERS WHEN NO SUIT IS PENDING

The court, in *Benavides v. Garcia,* 687 S.W.2d 397 (Tex.App.-San Antonio 1985, no writ), stated as follows:

> However, relator's non-suit does not divest the trial court's jurisdiction to enter *temporary* custody orders to serve the best interests and protect the welfare of the minor children of the parties. *Ex parte Brown,* 382 S.W.2d 97, 99 (Tex. 1964); [Other citations omitted.] The temporary orders entered upon the dismissal of the underlying divorce suit continue in full force and effect until set aside by the issuing court or modified by another court of competent jurisdiction.

In the pre-Family Code case of *Ex parte Brown,* 382 S.W.2d 97 (Tex.1964), the Court stated as follows:

> It has also been held that the court may enter an effective *temporary* custody order upon the taking of a non-suit in the divorce action. *McClendon v. McClendon,* Tex.Civ.App. [1956], 289 S.W.2d 640 (no writ).[5] This holding in the *McClendon* case is sound, but we do not approve the statements in the opinion of the Court of Civil Appeals indicating that the trial court might properly have made a custody determination that would have been final and permanent in the absence of some material change in circumstanc-

es. A district court must be in position to protect the interests of any minor that is brought before it, but this can be done by the entry of temporary orders in the unusual situation where the case in which its jurisdiction was invoked is dismissed. It is not necessary for the court to make a final adjudication of custody when no one is seeking that relief.

■ Both the Texas Supreme Court and the San Antonio Court of Appeals emphasized that such orders after a non-suit would be of a temporary nature. The Supreme Court, in *Ex parte Brown, supra,* went on to say that awarding temporary custody was the extent of the trial court's power after the mother had taken a non-suit in the divorce action. The Supreme Court further stated that except for the power to make further temporary orders as the interest of the child might require, the active jurisdiction of the trial court over the subject matter terminated when it granted the wife's motion for a non-suit. Thus, when another district court entered its divorce and custody decree, the second court had acquired complete jurisdiction over the parties and the subject matter, and the rendition of its judgment rendered the temporary custody order of the first court of no further force and effect.

## THE FAMILY CODE REQUIREMENTS

The Texas Legislature recognized the undesirability of permitting different courts to control the various segments of the marital relationship, and therefore established in the Family Code a requirement for uniting the suit affecting the parent-child relationship with the suit for divorce. *Matter of Marriage of Allen,* 593 S.W.2d 133 (Tex. Civ.App.-Amarillo 1979, no writ).

Tex.Fam.Code Ann. § 3.55(b) (Vernon 1975) requires that a suit for divorce include a suit affecting the parent-child relationship when minor children are involved. The only exception to this provision is if another court has continuing jurisdiction

---

**5.** The case of *McClendon v. McClendon,* 289 S.W.2d 640 (Tex.Civ.App.-Fort Worth 1956, no writ), is also a pre-Family Code case which allowed temporary orders to stand after a non-suit.

under Tex.Fam.Code Ann. § 11.05 (Vernon 1986). If two courts have continuing jurisdiction, then Tex.Fam.Code Ann. § 11.06(c) (Vernon 1986) provides that upon a showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, the court having continuing jurisdiction of the suit affecting parent-child relationship shall transfer the proceedings to the court where the dissolution of the marriage is pending.

In the event that two different courts have a divorce action pending which include the parent-child relationship or two courts have matters which involve only the parent-child relationship, then when the court having dominant jurisdiction renders a final decree, the jurisdiction of the other court will terminate. When a final decree is entered by a court, it acquires continuing, exclusive jurisdiction pursuant to Section 11.05(e) of the Family Code. This section further provides that a voluntary dismissal of a suit affecting the parent-child relationship prior to a final decree terminates all the jurisdiction of the court, and that unless a final decree has been entered by a court of continuing, exclusive jurisdiction, a subsequent suit shall be commenced as an original proceeding. Thus, in the present case, we must determine if the Gregg Court had entered a final decree, so that it would have continuing, exclusive jurisdiction.

### FINALITY OF ORDERS

A final decree is generally characterized as appealable. Interlocutory orders are not appealable unless they are specifically made so by statute. To be final, a decree must dispose of all issues presented by the pleadings so that no future action will be necessary to settle and determine the case. *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex.1966). A judgment is interlocutory when it determines less than all issues as to all parties, thereby leaving something to be determined and adjudi-

cated by the court in disposing of the parties and their rights. *Kelley v. Kelley*, 583 S.W.2d 671 (Tex.Civ.App.-Austin 1979, writ dism'd), 2 L. Simpkins, *Texas Family Law* § 13:26 (Speer's 5th ed. 1981). A decree dissolving a marriage, appointing a conservator of children, fixing visitation rights, and disposing of community property, but not fixing child support, has been held to be not final. *Stone v. Stone*, 531 S.W.2d 850 (Tex.Civ.App.-Dallas 1975, no writ). If a judgment expressly reserves the issue of child support or property division for future determination by the court, the judgment is interlocutory in nature. *Campbell v. Campbell*, 550 S.W.2d 164 (Tex.Civ.App.-Austin 1977, no writ).

The Texas Family Code provides in pertinent part as follows:

(a) Appeals from orders, decrees, or judgments entered in suits affecting the parent-child relationship, when allowed under this section or under other provisions of law, shall be as in civil cases generally.

.     .     .     .     .

(b) An appeal may be taken by any party to a suit affecting the parent-child relationship from an order, decree, or judgment:

.     .     .     .     .

(2) entered under Chapter 14 of this code appointing or refusing to appoint a managing conservator; ....

Tex.Fam.Code Ann. § 11.19 (Vernon 1986).

We construe this section of the Family Code to provide for a review of such orders, decrees and judgments as set forth in the section, but not to establish that such orders can be appealed on a piecemeal basis. As specifically stated in the opening section, these appeals "shall be as in civil cases generally."

At the time of the motion for non-suit in the present case, the court had heard evidence only on the issue pertaining to the appointment of a managing conservator.[6]

---

6. The statement of facts reflects that the testimony was preceded by the following statements by the court and the attorneys:

THE COURT: This is number 84–2705 DR, Teresa Noreen Ault and Ben A. Ault. Suit for divorce was filed on the 24th of October, 1984

Mrs. Ault, therefore, was entitled to a complete non-suit when she filed her motion.

■ In reviewing the Gregg Court order, we find that it does not qualify as a final decree. The order provides that, "By agreement of the parties, said cause was recessed for the parties to attempt negotiation of property and child support and visitation issues." The order further states that "The Court reserves further ruling on the issues of child support, visitation of the possessory conservator and property division and divorce until such time as the matter is taken up again." The order is also incomplete in that it appoints a managing conservator and a possessory conservator, but does not comply with the mandatory provisions of Tex.Fam.Code Ann. § 14.-03(c) (Vernon 1986) which states as follows:

> On the appointment of a possessory conservator, the court shall prescribe the rights, privileges, duties, and powers of the possessory conservator.

Mr. Ault contends that Mrs. Ault should be estopped from contending the child custody is not final, because she agreed to allow the issue of conservatorship to be tried in the Gregg Court, and further agreed to allow the Gregg Court to make a final ruling on this portion of the case so that the parties could endeavor to reach an agreement on the other issues. No finding of bad faith was entered by the Gregg Court.

While the situation created by the non-suit gives Mrs. Ault a second chance to litigate the issue of the appointment of managing conservator, the right to take a non-suit is a long-established and recognized practice. Interlocutory orders are often wiped out by the taking of a non-suit. *Homeright Co. v. Exchange Warehouses, Inc., supra.* This result could have been avoided if Mr. Ault had filed a cross-action in the Gregg Court prior to the hearing, or if the Gregg Court had reserved its ruling until all of the evidence on the issues had been heard.[7]

## CONCLUSION

■ We recognize that the Gregg Court considered the order regarding managing conservatorship to be final, but based upon the foregoing factors, that order must be construed to be interlocutory. Therefore, pursuant to Section 11.05(e) of the Family Code, the Gregg Court did not retain continuing, exclusive jurisdiction over the matters involving the parent-child relationship. No final decree having been entered by a court of continuing, exclusive jurisdiction, the Upshur Court suit was commenced as an original proceeding in accordance with Section 11.05(e). Furthermore, the non-suit had the effect of eliminating the interlocutory order from the Gregg Court, and the Upshur Court trial is now de novo.[8] *United States Fidelity & Guaranty Co. v. Beuhler, supra.*

By granting in part the plea in abatement in this divorce action, the Upshur Court in effect refused to take jurisdiction over the portion of the suit involving the parent-child relationship. This Court may issue a writ of mandamus to correct an order of the trial court which refuses to take jurisdiction of a claim if that refusal is based upon an erroneous theory of law.

and is before the court for final hearing. Mrs. Ault is present represented by Steve Kattner and Mr. Ault by Robin Sage. I understand that there is an issue as *to managing conservatorship* of Sammy Lynn and Doyle Adam Ault, and that ya'll wish to present the jurisdictional testimony, proceed to try that issue and get a decision on it before you go into the other matters, is that correct counsel?

   MR. KATTNER: That's correct, your honor.
   MISS SAGE: Yes, sir.

7. We are aware that the proceedings were conducted by hearing only the managing conservator issue first as an accommodation to the parties to allow settlement negotiations and to expedite the case. However, so long as Rule 164 of the Texas Rules of Civil Procedure in its present form applies, there is the chance that the petitioner will take a non-suit.

8. Tex.Fam.Code Ann. § 11.06(k) (Vernon 1986) provides that "All judgments, decrees, and orders transferred shall have the same effect and be enforced as if originally entered in the transferee court." If a non-suit had not been taken by Mrs. Ault, then the transfer pursuant to Section 11.06 would have kept the interlocutory order alive.

*Pollock v. Dowell,* 583 S.W.2d 886 (Tex.Civ. App.-Dallas 1979, no writ).

We have no reason to believe that the district judge will fail to overrule the plea in abatement with regard to determining parent-child relationship issues upon the receipt of this opinion. For this reason, a preemptive writ of mandamus will be issued only in the event that the trial judge should not proceed to take jurisdiction for determining matters involving the parent-child relationship as anticipated. The writ of mandamus is conditionally granted.